IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ERNESTO A. REYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 316-063 |
| | ) |
| JOHNSON STATE PRISON and | ) |
| JENKINS CCA, | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Washington State Prison in Davisboro, Georgia, is proceeding *in forma pauperis* in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

I. **SCREENING OF THE COMPLAINT**

A. **BACKGROUND**

Plaintiff names Johnson State Prison ("JSP") and Jenkins CCA as Defendants. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On August 11, 2015, Plaintiff was incarcerated at JSP. (Id. at 5.) A group of inmates attacked Plaintiff and his cell mate with homemade shanks. (Id.) A correctional officer

came to the scene of the attack, but did nothing to stop it. (Id. at 5-6.) Nor did any staff at JSP make sure Plaintiff got proper medical treatment after the attack. Instead, Plaintiff saw a nurse that only "cleaned [him] up and put the incident on file but never gave [him] any type of treatment." (Id. at 6.) Plaintiff was put in segregation without further medical treatment until his transfer on August 15, 2015, to Jenkins CCA, a correctional facility run by Corrections Corporation of America. (Id.)

Upon his arrival at Jenkins CCA, Plaintiff advised the intake officer and medical staff of his wounds from the shank attack, and he explained he was running a fever. (Id.) However, no one checked Plaintiff's injuries, and he was placed in a dormitory. (Id.) On August 18, Plaintiff told the floor officer he did not feel well and asked to go to the medical department. (Id.) The officer told Plaintiff to fill out sick call request, but because it was the weekend, Plaintiff would not be seen by medical personnel until Monday. (Id. at 6-7.) Plaintiff collapsed later that day, and was taken to the medical department, where he received a Tetanus shot that he asserts should have been administered when he was attacked at JSP. (Id.)

As to the grievance procedure, Plaintiff states there is an available grievance procedure, but he did not utilize it because "the grievance procedure will not give [him] enough results in a serious matter such as this." (Id. at 4.)

**B.    DISCUSSION**

Plaintiff's complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see

3

also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001.  Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required.  SOP IIB05-0001 § VI(A)(4).  The administrative remedies procedure commences with the filing of the Original Grievance.  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor.  Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it.  Id. § VI(D)(5).  If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office.  Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending.  See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

Here, Plaintiff acknowledges there is a grievance procedure, but he chose not to use it because of his belief he would not get "enough results." (Doc. no. 1, pp. 3-4.) Thus, Plaintiff did not commence, let alone exhaust, the grievance procedure. To properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff must complete the entire administrative grievance procedure *before* initiating a lawsuit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete, or use at all, the grievance process prior to commencing this case. (Doc. no. 1, pp. 3-4.) Therefore, the

5

complaint fails to state a claim upon which relief can be granted.  See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

## II. CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted.  Therefore, the Court **REPORTS** and **RECOMMENDS** the complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 26th day of August, 2016, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA